## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

ARTHUR ROSS,

      **Petitioner,**

v.                                                    CASE NO. 6:15-cv-2629-T-02TGW

SECRETARY, DEPARTMENT OF
CORRECTIONS, *et al.*,

      **Respondents.**

_____/

## ORDER

Arthur Ross, a Florida prisoner, initiated this action for habeas corpus relief pursuant to 28 U.S.C. Section 2254. (Dkt. 1). Upon consideration of the petition and memorandum, the Court ordered Respondent Secretary, Department of Corrections, to show cause why relief sought in the petition should not be granted. (Dkt. 6). Thereafter, Respondent filed a response in opposition to the petition, along with the state court record. (Dkts. 25, 27). Mr. Ross then filed a reply. (Dkt. 28).

In his petition, Mr. Ross alleges the following seven grounds for relief. The Court will address related claims together.

1. "Defense counsel rendered ineffective assistance of counsel by failing to investigate Petitioner Ross's Competency or seek a competency determination." (Dkt. 1 at 4).

2. "Defense counsel rendered ineffective assistance of counsel by failing to advi[s]e Petitioner Ross of the mandatory minimum requirement of the Prison Release Reoffender ("PRR") portion of his plea agreement." (Dkt. 1 at 4).

3. "Defense counsel rendered ineffective assistance of counsel by failing to perform any pre-trial investigation[,] explain charges or procedure to Petitioner Ross or discuss options for trial." (Dkt. 1 at 5).

4. "Petitioner Ross asserts that his plea was entered involuntarily due to a lack of several psychosomatic medications[, which] rendered him incompetent at the time of the acceptance of his plea." (Dkt. 1 at 5).

5. "Defense counsel rendered ineffective assistance of counsel by failing to advise Petitioner Ross of the consequences of a sentence under the prison release reoffender (PRR) [statute,] making his plea involuntary." (Dkt. 1 at 6).

6. "Defendant submits that his plea was involuntary due to defense counsel coercing him into accepting the plea bargain offered by the state. Defense counsel stated if Petitioner Ross elected not to accept the [plea] offer, the Petitioner would receive the maximum sentence by law." (Dkt. 1 at 6).

7. "Defense counsel was ineffective for misadvising Petitioner that the State had promised not to exceed a cap of fifteen (15) years imprisonment. Had it not been for this promise by defense counsel allegedly conveyed by the State, Petitioner Ross would not have accepted the plea. Alternatively, the State [reneged] on their promise not to recommend more than fifteen years imprisonment; Petitioner Ross is now seeking to have that promise enforced." (Dkt. 1 at 7).

## I.   PROCEDURAL HISTORY

On April 20, 2012, Mr. Ross pleaded no contest to ten offenses in three cases. (Dkt. 27 Ex. 1 at 93). The offenses included burglary of a dwelling, grand theft, dealing in stolen property, and false verification of ownership to a pawn broker. (*Id.*). He was adjudicated guilty and sentenced according to the terms of his plea agreement to concurrent sentences amounting to thirty years' imprisonment. (Dkt. 27 Ex. 1 at 101–02). He then filed a *pro se* motion to withdraw his plea, which was denied. (Dkt. 27 Ex. 1 at 75–79, 107–08). Mr. Ross filed motions to modify, amend, reduce, or correct his sentences pursuant to Rule 3.800(a), (c), Florida Rules of Criminal Procedure, which were denied. (Dkt. 27 Ex. 1 at 106; Ex. 13; Ex. 14).

Mr. Ross also appealed his judgments and convictions: his trial counsel first filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 744 (1967),[1] following which Mr. Ross filed a *pro se* brief. (Dkt. 27 Exs. 4, 5). Florida's Second District Court of Appeal affirmed his convictions

---

[1] In *Anders v. California*, 386 U.S. 738, 744 (1967), the Supreme Court set forth a procedure for court-appointed counsel to pursue an appeal requested by his client when counsel has determined there is no merit to the appeal.

and sentences without a written opinion. *Ross v. State*, 129 So. 3d 371 (Fla. 2d DCA 2013) (per curiam) (table). (Dkt. 27 Ex. 9).

Mr. Ross subsequently filed a motion for post-conviction relief pursuant to Rule 3.850, Florida Rules of Criminal Procedure. The motion was denied, and the denial was affirmed on appeal. (Dkt. 27 Exs. 22, 23, 25).

Mr. Ross thereafter filed his federal habeas petition in this Court. Upon review, the Court can resolve the entire petition on the basis of the record. Therefore, an evidentiary hearing is not warranted. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

## II.   GOVERNING LEGAL PRINCIPLES

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

### A.  Standard of Review Under the AEDPA

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

## B. Ineffective Assistance of Counsel Standard

Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a petitioner to demonstrate both deficient performance by counsel and resulting prejudice. Demonstrating deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

The petitioner must demonstrate that counsel's alleged errors prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92. To show prejudice, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Sustaining a claim of ineffective assistance of counsel on federal habeas review is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations omitted). *See also Cullen v. Pinholster*, 563 U.S. 170, 202 (2011) (a petitioner must overcome the " 'doubly deferential' standard of *Strickland* and AEDPA.") (citation omitted).

If a claim of ineffective assistance of counsel can be resolved through one of *Strickland*'s two prongs, the other prong need not be considered. 466 U.S. at 697; *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

## III. ANALYSIS

### A. Grounds One & Four

Grounds one and four relate to Mr. Ross's competency at the time he pleaded no contest. In ground four, Mr. Ross contends that he had not been administered two prescribed psychosomatic drugs, Risperdal and Seroquel, rendering him incompetent to enter his plea. (Doc. 4 at 14–15; *see also* Dkt. 1 at 5). He claims that he told the trial court he needed to be on medication, but that he was not. (Dkt. 4 at 14). He also asserts that, as a result of not being administered his medication, he was "suffering from a vast array of delusions[,] including[] hallucinations, extreme anxiety, and various other forms of psychosis" and was "deprived of the competency necessary to understand the arrangements being stipulated to in the plea colloquy." (Dkt. 4 at 14, 15).

In related ground one, Mr. Ross contends that his trial counsel failed to investigate his competency, even though Mr. Ross informed counsel of his mental diagnoses (schizophrenia, bipolar disorder, hallucinations, and severe anxiety). (Dkt. 4 at 3). He contends that his trial counsel should have requested a competency hearing or sought to have him evaluated by a qualified mental health practitioner. (Dkt. 1 at 4; Dkt. 4 at 4).

Ultimately, Mr. Ross claims that, due to his mental state, he did not realize the ramifications of his plea and punishment until after the sentencing hearing (Dkt. 4 at 4) and that, had he "been in his proper mind[,] he would not have accepted a plea surrendering thirty (30) years of his life . . . to a crime accused on circumstance." (Dkt. 4 at 15).

Mr. Ross raised these claims in his Rule 3.850 motion for post-conviction relief, the denial

of which was affirmed on appeal. (Dkt. 27 Ex. 22 at 15–19, 36–39; Ex. 25; Ex. 28). Responding

to the motion, Respondent argued that Mr. Ross did not provide sufficient information to support

his claim of incompetency, as he failed to provide information such as when he was diagnosed,

"the nature of his treatment, what specific symptoms he suffers and their consistency," and "when

he was on medication or how it affected him." (Dkt. 27 Ex. 24 at 85, 90–91). Respondent further

argued that, although Mr. Ross broadly claimed to experience hallucinations, nothing in the record

supports Mr. Ross's claims of incompetency, as he was able to appropriately answer questions

during his hearing. (*Id.* at 85, 90)

Adopting Respondent's arguments that the record refuted Mr. Ross's allegations (because

he acted properly and answered appropriately during the plea colloquy and otherwise failed to

sufficiently articulate and substantiate his allegations), the post-conviction court denied the claims.

(Dkt. 27 Ex. 25). For the reasons that follow, the state post-conviction court's[2] decision is not

contrary to, or an unreasonable application of, federal law or based on an unreasonable

determination of the facts.

The Supreme Court has explained that "the failure to observe procedures adequate to

protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives

him of his due process right to a fair trial." *Drope v. Missouri*, 420 U.S. 162, 172 (1975) (citing

*Pate v. Robinson*, 383 U.S. 375 (1966)). The federal standard for competence is "whether [the

defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of

---

[2] When presented with an appellate court's per curiam affirmance, as in this case, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). "[T]he [party objecting] may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision[.]" *Id.* The Court, therefore, reviews the reasoning supplied by the state post-conviction court in this case, absent rebuttal of the presumption in this proceeding.

rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960). *See also Drope v. Missouri*, 420 U.S. 162, 171 (1975) ("It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial."). Florida uses the same standard. *See* Fla. Stat. § 916.12(l) ("A defendant is incompetent to proceed within the meaning of this chapter if [he] does not have sufficient present ability to consult with . . . his lawyer with a reasonable degree of rational understanding or if the defendant has no rational, as well as factual, understanding of the proceedings against . . . him.").

When presented with a claim of incompetency, a reviewing court considers "whether the objective facts known to the trial court at the time create a bona fide doubt as to mental competency," regardless of whether the party requested a competency hearing or determination. *Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245, 1256 (11th Cir. 2002). "[A habeas] petitioner is entitled to a hearing on his or her substantive incompetency claim upon a presentation of 'clear and convincing evidence [raising] a substantial doubt' as to his or her competency to stand trial." *James v. Singletary*, 957 F.2d 1562, 1572 (11th Cir. 1992). Similarly, regarding a claim of ineffective assistance of counsel, "[i]n order to demonstrate prejudice from counsel's failure to investigate [a petitioner's] competency, [the] petitioner has to show that there exists 'at least a reasonable probability that a psychological evaluation would have revealed that he was incompetent to stand trial.'" *Futch v. Dugger*, 874 F.2d 1483, 1487 (11th Cir. 1989) (quoting *Alexander v. Dugger*, 841 F.2d 371, 375 (11th Cir. 1988)).

In this case, the following colloquy occurred at Mr. Ross's plea hearing and sentencing:

THE COURT: Do you swear or affirm to tell the truth, the whole truth and nothing but the truth?

THE DEFENDANT: Yes Ma'am.

THE COURT: Okay, tell me your full name.

THE DEFENDANT: Yes Ma'am, Arthur Ross, Arthur Godfrey Ross.

THE COURT: How old are you?

THE DEFENDANT: 53 ma'am.

THE COURT: And how far did you get in school?

THE DEFENDANT: 11th grade.

THE COURT: Okay Mr. Ross you are here charged in a bunch of cases.

THE DEFENDANT: Yes Ma'am.

THE COURT: [The court lists the cases and charges]. You are going to plea as charged, you are going to plead no contest and I'm going to sentence you to thirty years in Florida State Prison.

MS. STEWART [(counsel for Defendant)]: Your Honor, it's going to be 30 years HFO with the first 15 PRR and the PRR — and the PRR are eligible counts which [are] the burglaries.

. . .

THE COURT: Okay you've got fines and court costs of $513.00 in each of these files. You're going to pay the State Attorney $300.00 in each of these files. There is $358.54 to the Polk County Sheriff in CF12-2013, as $190.00 to LPD in CF12-3064; there is $50.00 for the application fee and $100.00 for the services of your attorney. Do you believe that's a reasonable amount of attorney fees for your attorney?

THE DEFENDANT: Yes Ma'am.

THE COURT: Okay. Because you could have a hearing on that. This agreement right here did you and Ms. Stewart go over it?

THE DEFENDANT: Yes Ma'am.

THE COURT: Did you discuss the — did you discuss the contents of this agreement?

THE DEFENDANT: Yes Ma'am.

THE COURT: And did you think that you had enough time to think about this before you came up here to enter this plea?

THE DEFENDANT: Yes – uhm – yes I did.

THE COURT: Sir?

THE DEFENDANT: Yes I did, ma'am.

THE COURT: Okay. Are you satisfied with Ms. Stewart as your attorney?

. . .

THE COURT: Okay. Alright sir . . . [the court asked Mr. Ross to enter his plea on each charge, and on each charge, Mr. Ross pleaded no contest.]

THE COURT: Has anyone promised you anything other than what I just told you to get you to enter into this plea?

THE DEFENDANT: No more — no more than — any more than a prayer Ma'am.

THE COURT: Has anyone threatened you, forced you[,] made you do this against your will?

THE DEFENDANT: No Ma'am.

THE COURT: Are you under the influence of drugs, alcohol, or other medications?

THE DEFENDANT: I need to be.

THE COURT: Have you ever been diagnosed with a mental illness?

THE DEFENDANT: Yes Ma'am.

THE COURT: Okay, are you on any medications for that?

THE DEFENDANT: Not at the moment ma'am.

THE COURT: Okay. Do you understand that by entering into this plea you are giving up your right to a trial?

THE DEFENDANT: Yes Ma'am.

THE COURT: And at that trial you could testify should you want to, Ms. Stewart would cross examine the State's witnesses and you could bring in witnesses to testify should you choose to, you understand you are giving that up?

THE DEFENDANT: Yes Ma'am.

THE COURT: And you are giving up your right to appeal anything I do unless I enter an illegal judgment and sentence?

THE DEFENDANT: Yes Ma'am.

THE COURT: Okay.

. . .

Okay. I have read the affidavit[,] it's accurate and I find they [sic] create a factual basis for the entry of the plea. I will accept the plea[,] find it freely, voluntarily, and knowingly entered with the advice of counsel.

. . .

MS. STEWART: And just — just to make sure the record is clear and the Court can inquire if I — but Mr. Ross pursuant to this plea agreement is stipulating and agreeing that he does qualify to be sentenced as a prison release reoffender and as an habitual felony offender.

THE COURT: You agree with that Mr. Ross?

THE DEFENDANT: Yes Ma'am.

MS. STEWART: Thank you[,] Your Honor.

THE COURT: Good luck to you sir.

(Dkt. 7 Ex. 1 at 92–93, 96–101)

In support of his claim of incompetency and his allegation that the trial court was aware of it, Mr. Ross points to the portion of the plea colloquy wherein he was asked whether he was under the influence of alcohol, drugs, or medications, and he answered that he "need[ed] to be." (Dkt. 27 Ex. 1 at 99). He also points to his response that he was not currently on medications for his illness. (*Id.*). However, those answers are not dispositive. The trial court could reasonably have interpreted his affirmation that he was not on medication to mean he was not prescribed medication for his conditions at that time. Moreover, Mr. Ross did not explain to the trial court why he felt he needed to be on medication or detail any symptoms that he was then experiencing.

The plea colloquy is here attached. Although fairly short, it presents Mr. Ross as a knowing, lucid participant.

It is settled law that the mere history of mental health issues does not establish incompetency to proceed. *See Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995) (quoting *Card v. Singletary*,

981 F.2d 481, 487-88 (11th Cir. 1992). "[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges." *Id.* Nothing in the plea colloquy demonstrates that Mr. Ross was incapable of understanding the proceedings or assisting counsel. Mr. Ross answered appropriately to the questions posed by the trial court and, though he had the opportunity to do so, failed to communicate to the trial court that he was experiencing debilitating mental health symptoms, as he now claims.

Mr. Ross's argument that he acted inconsistently, thereby demonstrating his lack of competence, is also not persuasive. He claims that it was inconsistent for him to "accept[] guilt for the charged offenses, under the belief that he [would] not receive enhanced penalties," but then "agree[] to stipulate that he qualify[ed] as a habitual felony offender and prison releasee reoffender without voicing objection." (Dkt. 28 at 2). However, as the post-conviction court noted in ruling on a different claim, by entering the plea agreement, Mr. Ross avoided even harsher outcomes, including the possibility that he would be sentenced to longer terms of imprisonment that, if run consecutively, could equal as many as one hundred years in prison. (Dkt. 27 Ex. 23 at 51).

Under these circumstances, the Court cannot find that Mr. Ross presented to the trial court " 'clear and convincing evidence [raising] a substantial doubt' as to his . . . competency to stand trial." *See James*, 957 F.2d at 1572. Nor does the Court find, presuming Mr. Ross told his trial counsel of his mental infirmities, that Mr. Ross established prejudice from his trial counsel's failure to arrange for a psychological evaluation or request a competency hearing. Mr. Ross has presented nothing demonstrating "a reasonable probability that a psychological evaluation would have revealed that he was incompetent to stand trial.' " *See Futch*, 874 F.2d at 1487. Accordingly, Mr. Ross is not entitled to relief on grounds one and four.

## B.  Grounds Two & Five

Grounds two and five involve the Prison Release Reoffender ("PRR") portion of

12

Mr. Ross's plea agreement and sentences. Mr. Ross contends that his trial counsel improperly failed to advise him of the consequences and mandatory minimum requirement of his sentence as a PRR, rendering his plea involuntary because he did not understand the ramifications of entering into the plea agreement. He claims that his attorney glossed over the specifics and urged Mr. Ross to accept the plea deal, as it would soon be "off the table." He also claims that, had he known about the mandatory minimum requirement and ineligibility for gain-time, he would not have entered into the plea agreement.[3] (Dkt. 1 at 4, 6; Dkt. 4 at 6–7, 16–17).

Mr. Ross raised these claims in his Rule 3.850 motion, the denial of which was affirmed on appeal. (Dkt. 27 Ex. 22 at 19–23, 39–42; Ex. 25; Ex. 28). Citing the trial court's order on Mr. Ross's motion to withdraw plea, Respondent argued that the record demonstrates Mr. Ross was fully advised of the nature of his sentence and knowingly and voluntarily pleaded no contest. (Dkt. 27 Ex. 24 at 93–95). The state post-conviction court accepted Respondent's argument and denied the claims. (Dkt. 27 Ex. 25).

Upon review, the state post-conviction court's decision was not contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts. In denying Mr. Ross's motion to withdraw plea, the state trial court explained that the plea colloquy refuted Mr. Ross's claims that he believed he was agreeing to a sentence with a fifteen-year cap and that he never read the plea agreement. (Dkt. 27 Ex. 1 at 107–08).

The following exchanges occurred during the plea colloquy:

THE COURT: Okay Mr. Ross you are here charged in a bunch of cases.

THE DEFENDANT: Yes Ma'am.

---

[3] Respondent argues that Mr. Ross has not properly alleged, or presented facts demonstrating, that he would have insisted on going to trial. However, that argument is not persuasive. Mr. Ross states he would not have entered the plea agreement. Construing this assertion broadly and considering that Respondent has not shown that any other plea agreement or option was available to Mr. Ross, the Court interprets Mr. Ross's statement to imply the necessary conclusion that he would have, instead, proceeded to trial.

THE COURT: [The court lists the cases and charges]. You are going to plea as charged, you are going to plead no contest and I'm going to sentence you to thirty years in Florida State Prison.

MS. STEWART: Your Honor, it's going to be 30 years HFO with the first 15 PRR and the PRR — and the PRR are eligible counts which [are] the burglaries.

THE COURT: Okay. Let's see how we are going to arrange this — so I'm going to sentence you to 30 years habitual offender uhm state prison — first 15 — I've got to — we've got to work this out.

MS. STEWART: I have a recommendation for Your Honor.

THE COURT: Yes Ma'am.

MS. STEWART: He has two cases which are burglary of dwellings.

THE COURT: Uh-huh.

MS. STEWART: That is case number . . . 12CF–2013 and case number 12CF–2961[.] [T]he burglary of dwellings qualify for the PRR so — and the HFO[.] [S]o my suggestion to The Court is that in the 2000–2013 and the 2961 he be sentenced as 30 years HFO with the first 15 PRR. And –

THE COURT: Well that has to be — yeah okay.

(Dkt. 27 Ex. 1 at 92–94).

Further, after discussing restitution:

THE COURT: They are free to go try and collect it but I just don't see that that's — that Mr. Ross is going to have a lot of money.

MS. STEWART: He is 53 years old and going to be at least 25 to 28 years minimum.

. . .

THE COURT: . . . This agreement right here did you and Ms. Stewart go over it?

THE DEFENDANT: Yes Ma'am.

THE COURT: Did you discuss the — did you discuss the contents of this agreement?

THE DEFENDANT: Yes Ma'am.

THE COURT: And did you have enough time to spend with Ms. Stewart to get your questions answered?

THE DEFENDANT: Yes Ma'am.

THE COURT: And did you think that you had enough time to think about this before you came up here to enter this plea?

THE DEFENDANT: Yes – uhm – yes I did.

THE COURT: Sir?

THE DEFENDANT: Yes I did, ma'am.

THE COURT: Okay. Are you satisfied with Ms. Stewart as your attorney?

THE DEFENDANT: Yes she is a good attorney ma'am.

(Dkt. 27 Ex. 1 at 96–97).

Additionally:

THE COURT: . . . In regard to the scoresheet – –

MS. STEWART: It is a guideline compliant scoresheet Your Honor, however with the statutory requirements for HFO and PRR the scoresheet is really irrelevant.

THE COURT: Okay. I'm approving the scoresheet, okay sir I'm going to approve the agreement find its freely, voluntarily and knowingly entered. Sentence you to 30 years of Habitual Offender[,] the first 15 as a PRR you are adjudicated guilty. Good luck to you sir all the F3's are five years concurrent[.]

. . .

MS. STEWART: All the second degree felonies except for the two burglaries are 15 years, all the third degree felonies are five years.

. . .

And just — just to make sure the record is clear and the Court can inquire if I — but Mr. Ross pursuant to this plea agreement is stipulating and agreeing that he does qualify to be sentenced as a prison release reoffender and as an habitual felony offender.

THE COURT: You agree with that Mr. Ross?

THE DEFENDANT: Yes Ma'am.

(Dkt. 27 Ex. 1 at 100–01).

The record of the plea colloquy therefore shows that the trial court stated on the record that Mr. Ross was being sentenced to 30 years — not a cap of 15 years, as Mr. Ross claims he believed. The Court also notes that, when the trial court stated he was being sentenced to thirty years, Mr. Ross failed to ask questions regarding the length of the sentence, implying he was aware of the consequences of the plea agreement prior to the plea hearing. The record, therefore, refutes his claim that he was unaware of the consequences of the PRR statute as it involved his plea agreement and attendant sentences.

Mr. Ross also stated, under oath, that he had reviewed the agreement with his attorney and had sufficient time to consider it before the plea hearing and sentencing. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Such representations are presumptively trustworthy and considered conclusive absent compelling evidence to the contrary. *See United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false."). Mr. Ross presented no compelling evidence to the state post-conviction court to suggest his statements at the plea hearing were not true.

Given the trial court's statements to Mr. Ross and discussions with counsel at the plea hearing, for which Mr. Ross was present, Mr. Ross cannot establish prejudice from any alleged error of trial counsel. The state post-conviction court could reasonably conclude that Mr. Ross understood the implications of the various provisions of the plea agreement, including the PRR mandatory minimums. Accordingly, grounds two and five are denied.

## C. Ground Six

In ground six, Mr. Ross contends that his trial counsel coerced him into accepting the plea agreement by telling him that if he did not accept it, he would receive the maximum sentence

permitted by law. (Dkt. 1 at 6; Dkt. 4 at 17–18). He claims this alleged misrepresentation as to the length of his possible sentence renders his no contest pleas involuntary, asserting he would not have accepted the plea agreement if advised appropriately. (Dkt. 1 at 6; Dkt. 4 at 18).

As with other claims of ineffective assistance, when a defendant challenges the entry of a guilty plea[4] based on ineffective assistance, he must show not only deficient performance, but also prejudice. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To demonstrate prejudice, he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Id.* at 59. Moreover, in order "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

Mr. Ross raised this claim in his Rule 3.850 motion, the denial of which was affirmed on appeal. (Dkt. 27 Ex. 22 at 42–45; Ex. 23 at 51; Ex. 28). In denying the claim, the state post-conviction court explained:

> Defendant argues that trial counsel coerced him into entering a plea. Defendant claims that he was told that he would receive a greater sentence if he did not accept the State's plea offer. Such a fact may have been true. Defendant was facing a total of 20 years in Florida State Prison in CF12–2013–XX, 40 years in [Florida State Prison] in CF12–2961–XX, and 40 years in CF12–3064–XX. The Court could have chosen to run the sentences consecutive to one another. Instead, the most Defendant received was 30 years [in Florida State Prison] in CF12–2961–XX and CF12–2013–XX.

(Dkt. 27 Ex. 23 at 51).

Although the question before the Court is one of ineffective assistance of counsel, the issue that underlies ground six — whether counsel accurately advised Mr. Ross about his possible sentence — is a question of state law. The state court's decision on that issue binds this Court.

---

[4] A plea of no contest "is the legal equivalent of a guilty plea and a waiver of all non-jurisdictional defects." *United States v. Caraway*, 474 F.2d 25, 28 (5th Cir. 1973), *vacated on other grounds*, 483 F.2d 215 (5th Cir. 1973) (en banc) (per curiam).

See *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). *See also Pinkney v. Secretary, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017) (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (superseded by statute on other grounds) ("[A]lthough 'the issue of ineffective assistance — even when based on the failure of counsel to raise a state law claim — is one of constitutional dimension,' [the Court] 'must defer to the state's construction of its own law' when the validity of the claim that . . . counsel failed to raise turns on state law.")). The Court is, therefore, bound by the state court's determination that trial counsel accurately represented Mr. Ross's sentence exposure. Because trial counsel's representation was accurate under state law, Mr. Ross has not demonstrated that counsel's performance was deficient under *Strickland*.

Moreover, Mr. Ross has not demonstrated prejudice, because he has failed to show that rejection of the plea agreement would have been rational. Absent the plea agreement, according to which Mr. Ross consented to a sentence of thirty years imprisonment, Mr. Ross faced the possibility that his sentences would run consecutively, imposing as much as one-hundred years in prison. (*See* Dkt. 27 Ex. 23 at 51).

Accordingly, Mr. Ross has not demonstrated that the state court's decision to deny this claim was contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts. Mr. Ross is not entitled to relief on ground six.

### D. Ground Seven

In ground seven, Mr. Ross claims his trial counsel misadvised him that the State had promised not to exceed a cap of fifteen (15) years' imprisonment. (Dkt. 1 at 7; Dkt. 4 at 19). He

claims that, had it not been for that advisement from counsel, he would not have chosen to accept the plea agreement and plead no contest. (Dkt. 1 at 7; Dkt. 4 at 19). He alternatively argues that the State reneged on its promise not to recommend more than fifteen years' imprisonment. (Dkt. 1 at 7; Dkt. 4 at 19).

However, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that -- (A) the applicant has exhausted the remedies available in the courts of the State[.]" 28 U.S.C. § 2254(b)(1)(A). In order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard*, 404 U.S. at 275-76) (quotation marks omitted). Mr. Ross concedes that he did not present to the state courts his alternative claim that the state reneged on its purported promise not to recommend more than fifteen years' imprisonment. (Dkt. 1 at 7) That argument is, therefore, not exhausted and is procedurally defaulted.

Similarly, Mr. Ross has not exhausted, and has procedurally defaulted, his claim of "misadvice" that the State promised not to exceed a cap of fifteen (15) years' imprisonment. While Mr. Ross raised this claim as a matter of state law in his motion to withdraw plea (Dkt. 27 Ex. 1 at 75–79), he did not raise the claim as one of federal law. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) (citing *Duncan*, 513 U.S. at 365; *Anderson v. Harless*, 459 U.S. 4, 5–6 (1982); *Picard v. Connor*, 404 U.S. 270, 275 (19871)) (explaining that a petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim). Nor did he raise the issue as a matter of either state or federal law in his Rule 3.850 motion. (Dkt. 1 at 7; Dkt. 27 Ex. 22).

Procedural default will be excused in only two narrow circumstances — if the petitioner establishes either: (1) cause and prejudice or (2) the fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). As cause for the default, citing *Martinez v. Ryan*, 566 U.S. 1 (2012), Mr. Ross asserts he was not represented by counsel during his post-conviction proceedings. (Dkt. 1 at 7–8).

In *Martinez*, the Supreme Court explained:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

To demonstrate that a defaulted claim of ineffective assistance of counsel is "substantial," the petitioner "must demonstrate that the claim has some merit." *Id.* at 14. "The substantiality of the ineffective-assistance-of-trial-counsel claim . . . [is] analyzed under the familiar framework set out in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984 )." *Ayestas v. Davis*, 138 S. Ct. 1080, 1096 (2018).

Upon review, *Martinez* does not excuse Mr. Ross's defaults. First, because his alternative claim — that the State reneged on its purported promise — is not a claim of ineffective assistance of counsel, *Martinez* does not apply. *See Arthur v. Thomas*, 739 F.3d 611, 629–30 (11th Cir. 2014) (explaining that the *Martinez* rule is a narrow exception to *Coleman*'s procedural default rule that "explicitly relates to excusing a procedural default of ineffective-trial-counsel claims.").[5]

Second, Mr. Ross has not demonstrated that his "misadvice" claim is substantial. During

---

[5] In his reply, Mr. Ross "rewords" his claim to assert a claim of ineffective assistance of counsel, rather than a claim of government error. (Dkt. 28 at 6–7). However, his attempt is unavailing. Nothing in ground seven, as originally stated, demonstrates an attempt by Mr. Ross to assert the argument as one of ineffective assistance of counsel. Mr. Ross is not permitted to raise new issues in his Reply. *See United States v. Krasnow*, 484 F. App'x 427, 429 (11th Cir. 2012) (per curiam) (citing *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008)).

the plea colloquy, Mr. Ross affirmed, under oath, that he was not promised anything other than the terms set forth in the plea agreement — which did not include a promise by the State to not recommend a sentence of more than fifteen years. (Dkt. 27 Ex. 1 at 99). As Mr. Ross has presented no compelling evidence to the contrary, his statement, made under oath, is presumed true. *See Blackledge*, 431 U.S. at 73-74; *United States v. Rogers*, 848 F.2d at 168. Therefore, the Court concludes his claim lacks merit, and *Martinez* does not excuse the procedural bar. Mr. Ross is, accordingly, not entitled to relief on ground seven.

### E. Ground Three

Finally, in ground three, Mr. Ross contends that his trial counsel rendered ineffective assistance "by failing to perform any pre-trial investigation[,] explain charges or procedure to [him,] or discuss options for trial." (Dkt. 1 at 5; Dkt. 4 at 7). Specifically, he claims counsel should have interviewed, deposed, or called as witnesses five individuals: William Dale Beck, the shift manager at the Talbot House (Mr. Ross's residence); Gerald Herring, a coworker of Mr. Ross who also lived at the Talbot House; Delores and Raymond Vincent, the victims in the case; and Detective Mark Walsh, the officer who arrested Mr. Ross. (Dkt. 4 at 7–12). Mr. Ross also claims that counsel did not review any evidence that was to be presented against him and failed to explain the charges against him or the defense options for trial. (Dkt. 4 at 7, 12–14). Overall, he argues that, but for counsel's ineffectiveness, the outcome would have been different, as he would not have been "forced" to accept the plea due to lack of options for a defense and would have chosen to take his chances at trial. (Dkt. 1 at 5; Dkt. 4 at 8–14).

The Supreme Court has stated that

> a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that

> occurred prior to the entry of the guilty plea. He may only attack the voluntary and
> intelligent character of the guilty plea by showing that the advice he received from
> counsel was not within the standards set forth in *McMann* [*v. Richardson*, 397 U.S.
> 759 (1970)].

*Tollet v. Henderson*, 411 U.S. 258, 267 (1973). In *McMann*, the Supreme Court explained that counsel's advice must be "within the range of competence demanded of attorneys in criminal cases." 397 U.S. at 771.

Mr. Ross's ground three claims merely challenge alleged deprivations of his right to effective counsel prior to the entry of his no-contest pleas and do not implicate the knowing and voluntary character of his pleas. Although Mr. Ross claims he was "forced" to accept the plea, that claim is belied by the record. At the plea hearing, Mr. Ross affirmed, under oath, that he had not been threatened or forced to plead no contest. (Dkt. 27 Ex. 1 at 99). Additionally, as Respondent contends, Mr. Ross's allegations do not implicate his understanding of the plea or consequences thereof. At the plea hearing, Mr. Ross affirmed, under oath, that he understood he was giving up his right to a trial and to the opportunity to testify and call witnesses to testify in his defense. (Dkt. 27 Ex. 1 at 99–100). As explained with regards to grounds two and five, he has presented no compelling evidence to suggest his statements at the plea hearing were not true. Accordingly, Mr. Ross waived the ability to raise the allegations in ground three by entering his pleas of no contest. He is, therefore, not entitled to relief on ground three.

Any of Mr. Ross's allegations not specifically addressed herein are without merit.

It is therefore **ORDERED AND ADJUDGED** that:

1.    The Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**. The Clerk shall enter judgment accordingly and close this case.

2.    A certificate of appealability (COA) is **DENIED** in this case because Mr. Ross cannot make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

22

And because Mr. Ross is not entitled to a COA, he is not entitled to proceed on appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on _____*15th November*_____, 2018.

WILLIAM F. JUNG
United States District Judge

Copies to: Petitioner *pro se*; Counsel of Record